Voto disidente emitido por el
Juez Presidente Señor Her-nández Denton,
al cual se unen la Jueza Asociada Se-ñora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
En el recurso de epígrafe, el Sr. Jorge Suárez Cáceres nos solicita que dejemos sin efecto una resolución de la Comisión Estatal de Elecciones mediante la cual se inter-preta el Art. 6.011 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3271, sobre el derecho a un recuento luego de las elecciones generales. En particular, el señor Suárez Cá-ceres impugna la determinación de dicho foro administra-tivo de interpretar la frase “votos totales depositados” para incluir los votos en blanco, los votos nulos, los votos protes-tados y los votos por personajes ficticios. Ello, pues aparen-temente entiende que esta interpretación incide sobre el cálculo que se debe realizar para adjudicar un escaño al Senado correspondiente al Partido Popular Democrático de acuerdo con el Art. Ill, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, así como de las disposicio-nes pertinentes de la Ley Electoral de Puerto Rico que es-tablecen un método de selección de candidatos adicionales de minoría a base de una fórmula proporcional.
Independientemente del desenlace procesal y sustantivo que pueda surgir de este caso, la realidad es que la Comi-sión Estatal de Elecciones reiteradamente ha asumido la *911 postura —la cual no ha sido cuestionada hasta el momento por ninguna de las partes— de que según cualquier defini-ción de la frase en controversia, procederá a declarar un empate y a celebrar un sorteo en conformidad con el Art. 6.012 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3272, pues la diferencia proporcional entre ambos candida-tos según cualquier esquema seguiría siendo por una frac-ción menor a la mitad de uno. Por otro lado, y dado que el peticionario no tiene derecho a participar en un recuento, es evidente que éste carece de legitimación activa para con-tinuar instando los procedimientos relacionados a esta controversia.
A pesar de que el caso particular ante nos es académico y sencillamente no es justiciable, hoy una mayoría de este Tribunal decide expedir el recurso de epígrafe y emitir un mandamiento para que se eleven los autos de este caso. Por ende, y en atención a que la dilación innecesaria en la solución de este caso afecta los derechos democráticos de miles de puertorriqueños que se encuentran desprovistos del grado mínimo de representación minoritaria en la Asamblea Legislativa que pretende salvaguardar la Cons-titución, disentimos de la determinación de este Tribúnal de expedir el recurso ante nuestra consideración.
HH
De entrada, debemos señalar que según la Regla 21 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, el re-curso ante nos —por ser una revisión de una decisión de la Comisión Estatal de Elecciones al amparo del Art. 1.016 de la Ley Electoral de Puerto Rico (Ley Electoral), 16 L.P.R.A. sec. 3016a— se encuentra perfeccionado y listo para su ad-judicación final. El inciso (A)(2) de la mencionada Regla 21 especifica que “ [1] a solicitud de certiorari constituirá el ale-gato de la parte peticionaria ...”. 4 L.P.R.A. Ap. XXI-A. Por otra parte, el inciso (C)(1)(a) de esta regla establece que el *912 memorando en oposición a la expedición del auto presen-tado dentro del término de diez días siguientes a la notifi-cación del certiorari también se considerará como el ale-gato del recurrido. Id.
Claramente, estas disposiciones especiales pretenden garantizar que los casos que involucren derechos electora-les se atiendan con la celeridad y atención que ameritan. Ello así, pues nuestro ordenamiento constitucional demo-crático reconoce la importancia de un andamiaje electoral eficiente y de que permee la estabilidad en todos los proce-sos electorales. Véase Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989).
En este caso, el peticionario ya presentó una solicitud de certiorari y el recurrido presentó un Memorando en Oposi-ción a que se Expida el Auto de Certiorari. Por lo tanto, este Tribunal ya cuenta con todas las herramientas nece-sarias para resolver este recurso y disponer del mismo a base de su mejor entendimiento, pues el caso ya está per-feccionado para los efectos del Reglamento de este Tribunal y del andamiaje electoral que se deduce del estado de derecho vigente.
Sin embargo, la mayoría de este Tribunal no ha ejercido su facultad de dictar sentencia en el caso de autos. Tam-poco ha tomado medidas especiales para acelerar la dispo-sición del presente recurso como siempre se ha hecho en casos electorales. Por el contrario, este Tribunal ha deci-dido atender el recurso de epígrafe mediante el trámite ordinario, en contravención a la primacía que histórica-mente le hemos concedido a los casos que involucran los derechos democráticos y electorales del pueblo.
En esencia, la determinación tomada por este Tribunal tiene como única consecuencia práctica que el asunto me-dular sobre la adjudicación del escaño senatorial en contro-versia aún no se pueda encauzar mediante un trámite ade-cuado y justiciable. Más aún, se mantiene activo un caso mediante el trámite ordinario que no nos permitirá, ni a *913 corto ni a largo plazo, cumplir prontamente con el mandato de la Constitución del Estado Libre Asociado de Puerto Rico (Constitución) de concederle una representación mí-nima a las minorías políticas, en protección de los princi-pios básicos de nuestra democracia constitucional. Véanse: P.P.D. v. Peña Clos 1, 140 D.P.R. 779 (1996); Faster v. Buso, 102 D.P.R. 327 (1974).
Veamos, pues, los incidentes procesales que dieron lugar al presente recurso.
HH
El tracto procesal relacionado a este caso forma parte, aunque de manera colateral y accidentada, del procedi-miento administrativo ante la Comisión Estatal de Eleccio-nes para cubrir un escaño en el Senado de Puerto Rico correspondiente al Partido Popular Democrático. Este pro-ceso se activó como consecuencia de que en las Elecciones Generales de noviembre de 2008 el Partido Nuevo Progre-sista obtuviera más de dos terceras partes de los escaños en el Senado. Al activar el método de selección de candida-tos adicionales de minoría que exige nuestro ordenamiento constitucional y electoral, el Partido Popular Democrático, como único partido de minoría, tuvo derecho a que se aña-dieran cuatro escaños adicionales en el Senado de Puerto Rico.
En conformidad con la fórmula establecida por el Art. Ill, Sec. 7 de la Constitución, L.P.R.A., Tomo 1, y por el Art. 6.012 de la Ley Electoral, 16 L.P.R.A. sec. 3016a (también conocida como la Ley de Minorías), la Comisión Estatal de Elecciones certificó la selección de los siguientes candida-tos como senadores por acumulación: el Sr. Juan Eugenio Hernández Mayoral, candidato por acumulación; el Sr. Eder Ortiz Ortiz, candidato por el Distrito de Guayama, y el Sr. José Luis Dalmau, candidato por el Distrito de Humacao. Por último, y en lo pertinente a este caso, el *914 cuarto escaño que se certificaría conforme a la Ley de Mi-norías a favor del Partido Popular Democrático se disputa entre el Sr. Ángel Rodríguez Otero del Distrito de Gua-yama y el señor Suárez Cáceres del Distrito de Humacao, quienes obtuvieron proporcionalmente en sus distritos 22.73% y 22.72%, respectivamente.(1)
En el ínterin, y antes de que se certificara la selección de los candidatos adicionales de acuerdo con la Ley de Mi-norías, se suscitó una controversia en los tribunales rela-cionada a cómo se debía realizar el recuento solicitado por el señor Dalmau en el Distrito de Humacao.(2) Así las co-sas, en ese caso intervinieron tanto el señor Rodríguez Otero como el señor Suárez Cáceres bajo la premisa de que el recuento ordenado por el Tribunal de Primera Instancia podría incluir los votos a favor de este último. Por lo tanto, adujeron en ese caso que cualquier variación en los resul-tados del escrutinio general en cuanto a ese Distrito podía incidir potencialmente sobre la fórmula proporcional para seleccionar el candidato que cubriría el último escaño se- *915 gún la Ley de Minorías. No obstante, pocos días después de que el foro primario ordenara la celebración del recuento, el señor Dalmau desistió de su solicitud de recuento para poder juramentar el 2 de enero de 2009 ante el Senado de Puerto Rico como candidato añadido por Ley de Minorías. (3)
Por su parte, la Comisión Estatal de Elecciones emitió una Resolución el 8 de enero de 2009 (CE-RS-09-01), me-diante la cual declaró un empate entre el señor Suárez Cáceres y el señor Rodríguez Otero. En esta resolución, la Comisión explicó que el Art. 6.012 de la Ley Electoral, supra, ordena que se descarte y no se considere fracción al-guna que sea menos de la mitad de uno. Por ende, ordenó la celebración de un sorteo para adjudicar el mencionado escaño al amparo de dicho articulado de la Ley Electoral.(4)
En ese contexto fáctico, el señor Suárez Cáceres acudió al Tribunal de Primera Instancia el 20 de enero de 2009 para solicitar la revisión de otra resolución que emitió la Comisión Estatal de Elecciones el 30 de diciembre de 2008 (CEE-RS-08-125). En dicha resolución, la Comisión había aclarado que la frase “votos totales depositados” contenida en el Art. 6.011 de la Ley Electoral, supra —para propósi-tos de computar el porcentaje de la diferencia entre dos can-didatos y dilucidar si se activa el derecho a un recuento— debe incluir los votos en blanco, los votos nulos, los votos protestados y los votos de nominación directa por personas ficticias. Para ello, el Presidente de dicho cuerpo dejó sin *916 efecto una Resolución de 23 de enero de 2008 que aducía lo contrario (CEE-RS-08-04), y sostuvo que durante las pasa-das elecciones se contabilizaron e incluyeron tales votos en el escrutinio general.
En atención a lo anterior, el recurso de revisión que pre-sentó el señor Suárez Cáceres se fundamentó, esencial-mente, en que la selección del último escaño del Partido Popular Democrático al amparo de la Ley de Minorías de-pende exclusivamente de la interpretación de dicha frase en el contexto del escrutinio general. Ello así, pues sugiere que si se incluyen tales votos para computar los porcenta-jes saldría favorecido el señor Rodríguez Otero, candidato a senador por el Distrito de Guayama. De lo contrario, en-tiende que si se deja sin efecto la referida resolución y se excluyen tales votos para computar los porcentajes, él sal-dría favorecido.
Por otro lado, el señor Rodríguez Otero solicitó la deses-timación de dicha solicitud por falta de legitimación activa y academicidad. En esencia, adujo que el estado de derecho vigente de acuerdo con el caso núm. KLCE200900044 —en el cual el Tribunal de Apelaciones desestimó por académica la controversia relacionada al recuento de los candidatos a Senadores en el Distrito de Humacao— también tornaba en académica la presente controversia. Sostuvo que al se-ñor Suárez Cáceres no le asistía el derecho a un recuento, por lo que todos los asuntos colaterales relacionados con ese derecho desistido por el Senador Dalmau también ha-bían advenido académicos. Según el señor Rodríguez Otero, ello evidentemente incluía la presente controversia, pues ésta trata sobre la interpretación de una disposición estatutaria con relación a cuándo se activa el derecho al recuento.
Trabada la controversia, el Tribunal de Primera Instan-cia declaró “con lugar” la solicitud de revisión presentada por el señor Suárez Cáceres. Concluyó que la frase “votos totales depositados” no incluía las papeletas en controver-sia y sólo debía incluir “aquellas papeletas votadas por el *917 elector y aceptadas como válidas por la Junta de Colegio correspondiente”, por lo que declaró que la Resolución CEE-RS-08-125 emitida por la Comisión Estatal de Elec-ciones era nula e inválida para propósitos del caso de autos. Apéndice del Escrito de certiorari, pág. 67.
Insatisfecho, el señor Rodríguez Otero acudió al Tribunal de Apelaciones. El tribunal apelativo revocó al foro pri-mario por falta de jurisdicción. Concluyó que ni el señor Suárez Cáceres ni el señor Rodríguez Otero eran partes interesadas para los efectos de la resolución recurrida de la Comisión Estatal de Elecciones, por lo que según el Art. 1.016 de la Ley Electoral, supra, el término para solicitar su revisión venció el 9 de enero de 2009. Resolvió que la solicitud de revisión que incoó el señor Suárez Cáceres el 20 de enero de 2009 se presentó fuera del término jurisdiccional.
Inconforme, el señor Suárez Cáceres acude ante este Tribunal y solicita que se revoque la sentencia dictada por el Tribunal de Apelaciones. Aduce que debemos reinstalar el dictamen del foro primario dejando sin efecto la resolu-ción de la Comisión, pues entiende que sus fundamentos inciden sobre la adjudicación eventual del último escaño correspondiente al Partido Popular Democrático conforme a la Ley de Minorías.
Por otra parte, el señor Rodríguez Otero compareció me-diante Memorando en Oposición a que se Expida el Auto de Certiorari. Por lo tanto, y por mandato de la Regla 21 del Reglamento de este Tribunal, supra, el recurso ante nos ya está perfeccionado y listo para su adjudicación ñnal pues, en conformidad con dicha regla, ya contamos con los alega-tos de las partes. Sin embargo, una mayoría de este Tribunal decide meramente expedir el caso y emitir un manda-miento para que se eleven los autos mediante el trámite ordinario sin resolver los méritos del recurso presentado con la atención prioritaria que éste amerita.
Más aún, la mayoría de este Tribunal sigue ese curso de *918 acción a pesar de que se deduce diáfanamente del expe-diente que atender cualquier asunto procesal o sustantivo con relación a este caso no tendrá efecto práctico sobre la adjudicación del escaño senatorial en controversia. En efecto, ninguno de los asuntos planteados en el recurso de epígrafe es justiciable en esta etapa de los procedimientos. Veamos.
I — I i — I
Un caso es académico cuando no presenta una contro-versia real o cuando el remedio que pueda concederse no tendrá efecto práctico. P.P.D. v. Gobernador I, 139 D.P.R. 643, 675 (1995); Asoc. de Periodistas v. González, 127 D.P.R. 704, 719 (1991); E.L.A. v. Aguayo, 80 D.P.R. 552, 584 (1958). Ello puede ocurrir cuando durante el trámite del pleito ocurren cambios fácticos o judiciales que tornan en ficticia su solución. San Gerónimo Caribe Project v. E.L.A. I, 174 D.P.R. 518 (2008); P.N.P. v. Carrasquillo, 166 D.P.R. 70, 75 (2005); P.P.D. v. Gobernador I, supra.
La doctrina de academicidad no es otra cosa que la “ ‘doc-trina de acción legitimada enmarcada en el tiempo’...”. P.N.P. v. Carrasquillo, supra, pág. 75. Al evaluar si un caso se ha tornado académico debe considerarse la relación que existe entre los eventos pasados que dieron lugar al pleito y la adversidad presente. Si con el pasar del tiempo la contro-versia pierde su vigencia, los tribunales deben abstenerse de considerar el caso en sus méritos. P.P.D. v. Gobernador I, supra, pág. 676. De esta forma se evita el uso inadecuado de los recursos judiciales y se obvian precedentes innecesarios. P.N.P. v. Carrasquillo, supra, pág. 75.
En atención a dicha doctrina, opinamos que el presente caso es evidentemente académico. En primer lugar, tanto la *919 resolución recurrida de la Comisión Estatal de Elecciones como el Art. 6.011 de la Ley Electoral, supra, que se inter-preta en ella se refieren exclusivamente al contexto particular de cuándo y cómo se deben realizar los recuentos, y no se refieren a cómo se deben contabilizar tales votos en el escru-tinio general.
De hecho, la resolución a quo se emitió en el contexto de que la Comisión Estatal de Elecciones se aprestaba a rea-lizar varios recuentos a través de la isla, por lo que la ex-clusión o inclusión de estos votos incidiría en el cómputo del porcentaje requerido por el mencionado artículo que constituye una de las dos fórmulas para activar el derecho al recuento; a saber, “una diferencia entre dos candidatos a un mismo puesto de cien (100) votos o menos, o de la mitad del uno por ciento (0.5%) de los votos totales depositados para esa posición ...”. (Enfasis suplido.) 16 L.P.R.A. see. 3271.
Por otro lado, es menester advertir que ni el señor Suá-rez Cáceres ni el señor Rodríguez Otero tienen derecho a un recuento en sus respectivos distritos senatoriales, pues la diferencia entre la cantidad de los votos que obtuvieron y la del próximo candidato que salió favorecido en cada uno de los distritos fue mayor de cien votos o de la mitad del uno por ciento de los votos depositados para esa posición, indistintamente de la definición que se utilice para la frase en controversia. A su vez, se debe tener presente que esta controversia se suscitó originalmente luego de que el Tribunal de Primera Instancia resolviera en otro caso que en el recuento solicitado por el señor Dalmau, candidato por el Distrito de Humacao, se debían contar los votos emitidos para todos los cargos de Senadores de dicho distrito senatorial. Véase Apéndice del Escrito de certiorari, pág. 24.(5)
*920 Por lo tanto, una vez el senador Dalmau desistió de su solicitud de recuento, el señor Suárez Cáceres perdió su legitimación activa para impugnar la referida resolución de la Comisión Estatal de Elecciones. Como ya indicamos, dicha resolución aplicaba específicamente al contexto de los recuentos, por lo que su vigencia perdió todo efecto prác-tico en este caso, una vez quedó establecido que no se cele-braría recuento. Dicha conclusión es inevitable, pues el se-ñor Suárez Cáceres no ha demostrado que haya sufrido un daño claro y palpable, que el referido daño sea real, inme-diato y preciso, ni mucho menos que exista una conexión entre el daño sufrido y la acción incoada en la cual solicita la revisión de la resolución en controversia. Véanse: Asoc. Maestros P.R. v. Srio. Educación, 137 D.P.R. 528 (1994); Hernández Torres v. Gobernador, 129 D.P.R. 824 (1992).
Del mismo modo, nos parece acertada la interpretación del Tribunal de Apelaciones en la sentencia recurrida, pues ni el señor Suárez Cáceres ni el señor Rodríguez Otero eran partes interesadas para propósitos de dicha resolución. Una certificación a esos efectos de la Secretaría de la Comisión Estatal de Elecciones carece de eficacia, pues sólo el cuerpo directivo de dicho foro puede certificar quiénes son las partes interesadas en sus resoluciones no adversativas. 16 L.P.R.A. sec. 3011(e). Sin embargo, enten-demos que éstos ni tan siquiera tenían legitimación activa para impugnar la resolución, pues realmente se trataba de una interpretación del Art. 6.011 de la Ley Electoral, supra, sobre la activación del derecho al recuento que no afectaba de manera real ni inminente a ninguno de los dos *921 candidatos, precisamente porque ninguno tenía derecho a un recuento en sus respectivos distritos.
Más aún, en todas sus comparecencias en este caso, la Comisión Estatal de Elecciones ha reiterado “que bajo cualquier esquema que los tribunales avalen, los candida-tos siguen en un virtual empate, por lo que procede un sorteo según lo conmina el Art. 6.012 de [la Ley Electoral]. Por tanto, este recurso —este caso ‘in toto’— es fútil”. (En-fasis en el original suprimido y énfasis suplido.) Apéndice del Escrito de certiorari, pág. 176. Dicha conclusión se deduce de un estudio comparativo que realizó la Comisión —el cual se presentó ante el foro primario— para propósi-tos de calcular el porcentaje que determinaría cuál candi-dato tuvo una proporción mayor de votos y así aplicar la fórmula establecida por el precepto constitucional sobre la representación adicional de minorías según cualquiera de las dos definiciones propuestas en el contexto del escruti-nio general. En efecto, el estudio comparativo realizado por la Comisión demuestra que independientemente de si se incluyen o no los votos nulos, en blanco o por personajes ficticios, la diferencia entre ambos candidatos sería de me-nos de 0.1% en cualquiera de los casos.
Por lo tanto, y al hacer una interpretación textual del penúltimo párrafo del Art. 6.012 de la Ley Electoral, supra, en ambos casos se tendría que descartar tal fracción y se procedería a celebrar un sorteo. Al presumir la constitucio-nalidad de dicho articulado de la Ley Electoral —la cual no ha sido impugnada por ninguna de las partes hasta el mo-mento— se hace totalmente innecesario y académico aten-der el asunto planteado ante nos en esta etapa de los procedimientos.
Aunque reconocemos que la uniformidad en el cómputo de los votos es un fundamento básico del derecho electoral, no se ha demostrado qué efecto práctico tendría en este caso dilucidar los méritos del significado de la frase “votos totales depositados” en la disposición de la Ley Electoral *922 referente a los recuentos. Aun en el contexto del escrutinio general, entrar en los méritos de dicha definición carecería de eficacia, pues es la posición de la Comisión —la cual aún no ha sido cuestionada por ninguna de las partes— que independientemente del esquema y de las reglas del escrutinio que se apliquen, en este caso existe un empate y se tendrá que celebrar un sorteo.
Como consecuencia, el único daño planteado por el se-ñor Suárez Cáceres en este caso es totalmente hipotético y abstracto. De hecho, su adjudicación sólo tendría algún efecto práctico si por alguna razón la Comisión Estatal de Elecciones desistiera de su intención de celebrar un sorteo o si prevaleciera un ataque a la constitucionalidad del re-ferido artículo de la Ley Electoral en un futuro hipotético. En todo caso, las normas básicas de justiciabilidad sólo permitirían que se presente tal cuestionamiento —o el cuestionamiento de cualquier asunto relacionado a las re-glas del escrutinio general— mediante una solicitud de re-visión de la resolución que ordene el sorteo en conformidad con el Art. 6.012 de la Ley Electoral, supra.
r — i <1
En conclusión, consideramos que entrar en los méritos de esta controversia en esta etapa constituiría una opinión totalmente consultiva. Indudablemente, la acción que ha tomado hoy una mayoría del Tribunal tiene el único efecto de prolongar la vida de un caso que no es justiciable y que no ha sido conducido debidamente por las partes desde sus orígenes, pues su resolución final no tendrá consecuencia jurídica para resolver la controversia en cuanto al escaño del Senado que aún no ha sido ocupado. Mientras tanto, dicho escaño continuará vacante y no se cumplirá diligente y prioritariamente con el mandato constitucional y con la ley de nuestra democracia que garantiza un grado mínimo *923 de representación de las minorías políticas en la Asamblea Legislativa.
En esencia, este caso es una tormenta en un vaso de agua. Sin embargo, al expedir el recurso y atender una controversia que claramente no es justiciable, este Tribunal convierte dicha tormenta en un huracán para enviar al avión “caza huracanes” en busca de su centro. Aguardare-mos con sosiego el regreso de ese avión cuando descubra que el huracán no es más que una gota en un vaso vacío.
Como resultado de lo anterior, disentimos respetuosa-mente de la determinación de la mayoría de expedir el re-curso de certiorari presentado por el peticionario.

 En específico, la Constitución del Estado Libre Asociado de Puerto Rico dis-pone que cuando entre en vigor el mandato de seleccionar candidatos adicionales de un partido de minoría “se considerarán, en primer término, sus candidatos por acu-mulación que no hayan resultado electos, en el orden de los votos que hayan obtenido y, en segundo término, sus candidatos de distrito que, sin haber resultado electos, hayan obtenido en sus distritos respectivos la más alta proporción en el número de votos depositados en relación con la proporción de los votos depositados a favor de otros candidatos no electos del mismo partido para un cargo igual en otros distritos”. (Énfasis suplido.) Art. Ill, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 385.
Es decir, la Constitución establece una fórmula proporcional precisa que aplica en los casos en que se deban seleccionar candidatos adicionales de minoría entre los candidatos de los distritos senatoriales. Asimismo, dicha cláusula constitucional au-toriza a la Asamblea Legislativa a adoptar “las medidas necesarias para reglamentar estas garantías, y dispondrá la forma de adjudicar las fracciones que resultaren en la aplicación de las reglas contenidas en esta sección ...”. Const. E.L.A., supra pág. 386. A su vez, la Ley Electoral de Puerto Rico (Ley Electoral) dispone que al aplicar el párrafo de la Constitución antes citado “se descartará y no se considerará fracción alguna que sea menos de la mitad de uno; y en el caso que resulten dos fracciones iguales, la Comisión Estatal de Elecciones procederá a hacer la determinación ... mediante sorteo ...”. Art. 6.012 de la Ley Electoral, supra. No obstante, la aplicación correcta o la validez de tales disposiciones no está en controversia en el presente caso.

 El señor Dalmau tenía derecho a un recuento de acuerdo con el Art. 6.011 de la Ley Electoral, 16 L.P.R.A. see. 3271, dado que su desventaja frente a la ganadora por el Partido Nuevo Progresista, la Sra. Mariíta Santiago, no excedía el 0.5%.

 Nótese que como consecuencia del desistimiento del senador Dalmau de ac-tivar su derecho a un recuento, posteriormente el Tribunal de Apelaciones desestimó ese caso por académico. Véase Sentencia del Tribunal de Apelaciones de 3 de febrero de 2009, Caso Núm. KLCE200900044.

 Sin embargo, mediante Resolución de 15 de enero de 2009, y tras atender una moción en auxilio de jurisdicción en el caso que surgió de la solicitud de recuento del Senador Dalmau, el Tribunal de Apelaciones ordenó la paralización de cualquier sorteo y declaró que la referida resolución emitida por la Comisión el 8 de enero de 2009 carecía de eficacia jurídica porque se emitió prematuramente. Ahora bien, nó-tese que como ese caso fue desestimado eventualmente por académico, esa orden en auxilio paralizando el sorteo perdió todo su efecto.

 Es decir, el foro primario entendió en ese caso que el recuento solicitado no debía limitarse a los votos emitidos a favor de Mariíta Santiago y del señor Dalmau, *920 sino que también se debían recontar los votos a favor del señor Suárez Cáceres por ser candidato en el mismo distrito. No obstante, y como mencionáramos anterior-mente, el señor Dalmau posteriormente desistió de su solicitud de recuento. Así, pues, todo lo resuelto en el pleito relacionado con el recuento de los candidatos a senadores por el distrito de Humacao se tornó académico. Véase Sentencia del Tribunal de Apelaciones de 3 de febrero de 2009, KLCE200900044, Apéndice del Escrito de certiorari, pág. 146.