EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>      Recurrido<br><br>               v.<br><br>Benjamín Pagán Medina<br><br>      Peticionarios | Certiorari<br><br>2010 TSPR 5<br><br>177 DPR _____ |

Número del Caso: CC-2009-74

Fecha: 19 de enero de 2010

Abogada de la parte peticionaria:

                Lcda. Ana Esther Andrade Rivera

Oficina del Procurador General:

                Lcda. Zaira Z. Girón Anadón
                Subprocuradora General

Materia:  Moción Informativa de la Parte Peticionaria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                           CC-2009-74        Certiorari

Benjamín Pagán Medina

    Peticionario

RESOLUCIÓN

San Juan, Puerto Rico, a 19 de enero de 2010.

        Examinada la *Moción Informativa* presentada por la parte peticionaria, en la que nos expone que la moción de reconsideración presentada por la Procuradora General se tornó académica por la decisión del foro de primera instancia de declararlo inimputable, consideramos que este caso, a pesar de ser académico, es justiciable toda vez que versa sobre una controversia recurrente y capaz de evadir la revisión judicial.

        El 6 de marzo de 2009, la Procuradora General presentó una solicitud de reconsideración de la Opinión emitida por este Tribunal en el caso de epígrafe, <u>Pueblo v. Pagán Medina</u>, res. el 18 de febrero de 2009, 2009 T.S.P.R. 31, 175 D.P.R. ___ (2009). Mediante ese dictamen se pautó que una vez se determina judicialmente que un imputado de delito no es procesable bajo la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y se ordena su reclusión para tratamiento, tan sólo se puede excluir del cómputo del término máximo de detención preventiva, el tiempo durante el cual éste estuvo efectivamente en una institución adecuada para su tratamiento. Al realizar el cálculo a base de lo dispuesto en ese dictamen, por exceder el término constitucional de seis

meses de detención preventiva en espera de juicio, esta Curia ordenó la excarcelación inmediata del peticionario y devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

El 21 de octubre de 2009, como parte de los procedimientos, el foro primario celebró una Vista de Inimputabilidad. En esa ocasión, el Psiquiatra del Estado, Dr. Rafael Cabrera Aguilar, informó al tribunal que luego de realizar la evaluación correspondiente al peticionario, y de estudiar su expediente clínico y criminal, entendía que al momento de los hechos por los cuales se les juzgaría, éste se encontraba en estado psicótico y había perdido contacto con la realidad, por lo que no conocía la criminalidad de sus acciones. A base de ese testimonio, el tribunal declaró al peticionario inimputable y lo absolvió de todos los cargos presentados en su contra. Además, ordenó que, de conformidad con la Regla 241 de Procedimiento Criminal[1], el Sr. Pagán Medina sea ingresado en el Hospital de Siquiatría Forense de Ponce.

Como consecuencia del trámite procesal reseñado, el peticionario acude ante este Foro y nos solicita que no tomemos en cuenta la reconsideración presentada por la Procuradora General, la cual aún está ante la consideración de este Tribunal. Aduce que esa petición del Estado se tornó académica ya que no existe una controversia real y actual entre las partes debido a su absolución, por lo que cualquier pronunciamiento de esta Curia no tendría efecto real alguno. Bajo ese fundamento, nos peticiona que declinemos expresarnos sobre los méritos de la solicitud de reconsideración presentada por la Procuradora General.

En vista del argumento del peticionario, debemos precisar que le asiste la razón en cuanto a que un asunto no es justiciable cuando, después de comenzado un pleito, hechos posteriores lo convierten en académico. Sobre el particular, hemos reconocido que los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución.[2] Esto es, el foro judicial no puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo.[3]

Como los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas,

---

[1]   34 L.P.R.A. Ap. II.

[2] Rullán v. Fas Alzamora, 166 D.P.R. 742, 761 (2006); Cruz v. Administración, 164 D.P.R. 341, 348-349 (2005).

[3] Rullán v. Fas Alzamora, supra, pág. 761; Cruz v. Administración, supra, pág. 349.

la academicidad se presenta como una doctrina de autolimitación judicial.[4] En esencia, con esta limitación sobre el poder de los tribunales se persigue evitar el uso innecesario de los recursos judiciales e impedir precedentes judiciales que resulten superfluos.[5]

Ahora bien, a pesar de que la norma general es que los tribunales deben abstenerse de entrar en los méritos de un caso que se ha tornado académico, existen circunstancias que, a manera de excepción, activan la función revisora del foro judicial al margen de que la controversia haya advenido académica. A estos efectos, hemos establecido que podemos revisar un asunto que, a pesar de ser académico, versa sobre una controversia recurrente y capaz de evadir la revisión judicial.[6]

Para determinar si estamos ante una controversia de tales características excepcionales, es necesario evaluar los siguientes factores: que haya una probabilidad razonable de que la controversia recurra, y que exista una probabilidad sustancial de que la controversia, a pesar de ser recurrente, eluda la revisión judicial.[7] De verificarse estos factores, se activa la aludida excepción a los efectos de evitar, entre otras cosas, que el mismo asunto se litigue repetidamente en los tribunales sin alcanzar una adjudicación definitiva.[8]

Como parte del análisis para verificar si se cumplen ambos factores, es necesario tener presente que, aunque la probabilidad sustancial de evadir la revisión judicial está presente mayormente en aquellas controversias de naturaleza efímera, pueden existir otras razones que ocasionen que una controversia deje de existir antes de que termine la litigación.[9] Además, es menester precisar que en lo relativo "a las partes en el litigio, para que aplique la excepción del carácter recurrente no es necesario que al repetirse la controversia ésta afecte a las mismas partes".[10]

---

[4] Rullán v. Fas Alzamora, *supra*, pág. 761; E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958).

[5] C.E.E. v. Depto. de Estado, 134 D.P.R. 927, 935-936 (1993); P.N.P. v. Carrasquillo, 166 D.P.R. 70, 75 (2005).

[6] Cruz v. Administración, *supra*, pág. 350; Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924, 937 (2000).

[7] Cruz v. Administración, *supra*, págs. 349-350; Asoc. de Periodistas v. González, 127 D.P.R. 704, 721 (1991).

[8] P.N.P. v. Carrasquillo, *supra*, págs. 75-76 (citando a E. Chemerinsky, A Unified Approach to Justiciability, 22 (Núm. 4) Conn. L. Rev. 677).

[9] Cruz v. Administración, *supra*, pág. 350; Asoc. de Periodistas v. González, *supra*, pág. 721.
[10] Cruz v. Administración, *supra*, pág. 350; Angueira v. J.L.B.P., 150 D.P.R. 10, 19-20 (2000); Asoc. de Periodistas v. González, *supra*, pág. 721; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 725, 728 (1980).

A la luz de lo anterior, resulta innegable que el caso de autos se ajusta a la excepción reseñada. Sin duda alguna, a pesar de que en esta etapa apelativa el peticionario ha sido absuelto de todos los cargos presentados en su contra, la cuestión ante nuestra consideración es recurrente toda vez que, al estar pendiente de adjudicación ante este Tribunal una solicitud de reconsideración, no se ha pautado de manera final y firme la norma aplicable. Su importancia es aún mayor debido a que lo que tenemos ante nuestra consideración es la interpretación de una norma constitucional —la detención preventiva antes del juicio no excederá de seis meses— que incide directamente sobre una cuestión de alto interés público: la capacidad del Estado de asegurar que los imputados de delitos comparezcan a la celebración del juicio en su fondo.

Con el objetivo de impedir la recurrencia de cuestionamientos de esta naturaleza, debido a que aún no hemos resuelto la controversia definitivamente, no estamos obligados a rechazar por académica la solicitud de reconsideración que pretende que reexaminemos la norma esbozada hace unos meses por este Tribunal en el caso de autos. Le corresponde a este Tribunal resolver de manera definitiva una cuestión de alto interés público con el objetivo de establecer una norma que guíe a los funcionarios encargados de hacer cumplir las leyes penales y a aquellos responsables de interpretarlas y aplicarlas.

Ciertamente, tal como aduce el Juez Presidente señor Hernández Denton en su Voto disidente, "la normativa que regiría la interpretación del término máximo de seis meses que establece nuestra Constitución para mantener a una persona en detención preventiva en aquellos casos en que se determine que ésta no es procesable criminalmente" se estableció hace apenas diez meses en Pueblo v. Pagán Medina, *supra*. En este sentido, a pesar de que ésta no ha advenido final y firme, de manera muy acertada el Juez Presidente concluye que "[d]e surgir una controversia similar los tribunales deben resolver conforme a dicha normativa". Ahora bien, es precisamente por lo acertada de tal aseveración que la solicitud de reconsideración pendiente ante nos cumple con la referida excepción a la doctrina de academicidad. Veamos.

Conforme a la norma pautada en Pueblo v. Pagán Medina, *supra*, hoy día los tribunales de primera instancia sólo están obligados a "excluir del cómputo del término máximo de detención preventiva el tiempo durante el cual [el imputado] estuvo efectivamente en una institución adecuada para su tratamiento".[11] Si tenemos en cuenta que las controversias relativas al término de detención preventiva ordinariamente se

---

[11] *Pueblo v. Pagán Medina*, res. el 18 de febrero de 2009, 2009 T.S.P.R. 31, pág. 2.

generan a partir de una petición de hábeas corpus, es innegable concluir que el Estado, ante la orden de excarcelación dictada por un foro inferior —como consecuencia de tal pauta jurídica—, sólo podrá recurrir a un tribunal de superior jerarquía con el objetivo de revisar tal dictamen. Sin embargo, nótese que tal excarcelación se suscita dentro del contexto de una petición de hábeas corpus, que constituye un procedimiento de naturaleza civil, distinto al proceso criminal que se lleva en contra del excarcelado.[12] De esta forma, aunque se encuentre pendiente la petición del Estado a los efectos de revisar la excarcelación ordenada, el foro primario tendrá que continuar los procedimientos en cuanto al caso penal toda vez que ya en esa etapa se ha determinado que el acusado de delito se encuentra procesable.

Precisamente, como el procedimiento penal continuará su curso, y los términos de juicio rápido obligan al Estado a actuar con ligereza, con toda probabilidad la revisión de la orden de excarcelación ante el Tribunal de Apelaciones y luego ante esta Curia, no será resuelta de manera definitiva **antes de que comience el juicio del imputado**. Como es sabido, una vez comenzado el juicio, la cláusula constitucional de detención preventiva[13] dejará de tener vigencia y el asunto se tornará en uno académico. He aquí la naturaleza efímera de la controversia ante nuestra consideración.

Por lo anterior, estamos en desacuerdo con la aseveración realizada por el Juez Presidente señor Hernández Denton en cuanto a que "[s]i este Tribunal interesa reconsiderar dicho dictamen, en estricto Derecho lo que procede es esperar por el caso apropiado para tal proceder". Como se ha demostrado, ese caso apropiado con toda probabilidad advendrá académico previo a que tengamos la oportunidad de considerarlo en sus méritos, pues, a juzgar por todo lo expuesto, la controversia que tenemos ante nuestra consideración definitivamente es de naturaleza efímera.[14]

---

[12] *Ramos Rosa v. Maldonado Vázquez*, 123 D.P.R. 885, 889 (1989).

[13] Art. II, Sec. 11. Const. E.L.A., Tomo 1.

[14] Ante lo vertido por el Juez Presidente en su voto disidente citando el caso *Alvarez v. Smith*, 558 U.S. ___ (2009), entendemos importante señalar lo siguiente: el presente es un caso que se encuentra **pendiente de resolver en reconsideración** por parte de este Tribunal. Por lo tanto, la **decisión y sentencia** que emitimos y que estamos en el proceso de reconsiderar-incluyendo nuestra Opinión de 18 de febrero de 2009 que pauta una nueva norma- **no ha advenido final y firme**. Precisamente *Alvarez v. Smith*, *supra,* es un caso en el que el Tribunal Supremo federal había expedido un *certiorari* para evaluar una ley de confiscaciones del Estado de Illinois. Estando pendiente de resolver el *certiorari*, el Tribunal Supremo federal se declara sin jurisdicción por haberse tornado académica la controversia. Acto seguido, el Tribunal revoca la sentencia del Tribunal de Apelaciones, devolviendo el caso a ese foro **para que lo desestime**. De esa manera y citando *United State v. Munsingwear*, 340 U. S. 36, 40 (1950), el Tribunal Supremo federal "clear[ing] the path for future relitigation of the issues." En ese

En conclusión, debido a la naturaleza del asunto aquí planteado, resultará muy probable que éste eluda nuevamente nuestra revisión previo a que tengamos la oportunidad de evaluarlo y atenderlo en sus méritos. Por estas razones, entendemos que el recurso ante nuestra consideración configura la referida excepción a la doctrina de academicidad por lo que es justiciable.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió un Voto disidente al cual se une la Jueza Asociada señora Fiol Matta. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

contexto señala asimismo el más alto foro federal, esta vez citando *U.S. Bancorp Mortage Co. v. Bonner Mall Partneship*, 513 U.S. 18, 25 (1994), que "[w]here mootness results from settlement" rather than " 'happenstance,' " the "losing party has voluntarily forfeited his legal remedy . . . [and] thereby surrender[ed] his claim to the equitable remedy of vacatur." A contrario *sensus*, cuando la academicidad surge por casualidad ("happenstance"), entiéndase, que no es el producto de un acuerdo ("settlement"), entonces debe revocarse la sentencia dictada por el foro inferior y ordenarse la desestimación, como ocurrió en *Alvarez v. Smith, supra.*

No hay duda de que la academicidad en el caso de autos no es el resultado de un pre acuerdo ("settlement") entre el ministerio público y la defensa, sino el producto del éxito de la defensa de inimputabilidad esbozada por el acusado ("happenstance"). De manera que, de la mayoría de este Tribunal coincidir con el voto disidente del Juez Presidente, y siendo fieles a la norma pautada por el Tribunal Supremo Federal en *Alvarez v. Smith, supra,* correspondería entonces que revocáramos al foro apelativo intermedio por ausencia de una controversia real, dejando sin efecto también nuestra Opinión del 18 de febrero de 2009, por sufrir del mismo defecto jurisdiccional y haberse convertido en una opinión consultiva.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
    Recurrido

       v.                      CC-2009-74   Certiorari

Benjamín Pagán Medina
    Peticionario

Voto Disidente emitido por el Juez Presidente SEÑOR HERNÁNDEZ DENTON al cual se une la Jueza Asociada SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 19 de enero de 2010.

Disentimos de la Resolución que emite el Tribunal que concluye que la moción de reconsideración del caso de autos no se tornó académica con la absolución del Sr. Benjamín Pagán Medina. Entendemos que la decisión del Tribunal soslaya uno de los principios básicos de justiciabilidad. Específicamente, dicha resolución invoca erróneamente una de las excepciones a la doctrina de academicidad, la probabilidad de recurrencia, con el único propósito de reconsiderar la Opinión emitida por este Tribunal el año pasado. Véase <u>Pueblo v. Pagán Medina</u>, res. el 18 de febrero de 2009, 2009 T.S.P.R. 31.

Como es sabido, mediante la doctrina de academicidad los tribunales se abstienen de adjudicar una controversia ya resuelta, emitiendo un pronunciamiento que no tendrá efecto práctico alguno sobre las partes en el litigio. A tal efecto, hemos dicho que una vez se determina que un caso es académico, los tribunales deben abstenerse de considerarlo en sus méritos, ya sea por imperativo constitucional (ausencia de "caso o controversia") o por motivo de autolimitación judicial. Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991).

Recientemente, el Tribunal Supremo de los Estados Unidos, por voz del Juez Asociado Breyer, reiteró la necesidad de la existencia de un caso o controversia para que se pueda ejercer el poder de revisión judicial. En particular, el máximo foro judicial federal determinó que la controversia presentada en ese caso —la validez del procedimiento establecido en una ley de Illinois para remediar los efectos de confiscaciones— se había tornado académica mientras el recurso pendía ante dicho tribunal. Al así resolver, reiteró que: "[a]n 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'" y que "a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies'." Alvarez v. Smith, 130 S.Ct. 576 (2009).

Es cierto que también hemos establecido que aunque determinada controversia se hubiese resuelto antes de que

el tribunal emitiera su dictamen, se podrá considerar el caso en sus méritos si la controversia es susceptible de repetirse, pero aun así evadiría la revisión judicial. Véanse P.N.P. v. Carrasquillo, 166 D.P.R. 70 (2005); Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980). Sin embargo, antes de invocar esta excepción, se tomarán en cuenta tres criterios: (1) la posibilidad de recurrencia de la controversia; (2) la identidad de las partes; (3) *y la probabilidad de que la controversia evada la revisión judicial*. Angueira v. J.L.B.P. (I), 150 D.P.R. 10 (2000). A tales efectos, como bien aduce el Profesor Álvarez González en su obra de Derecho Constitucional:

> La excepción de recurrencia ("capaz de repetirse, pero evadir revisión judicial") intenta delimitar aquellas situaciones en que la controversia se ha tornado académica debido a circunstancias de tiempo íntimamente relacionadas con su naturaleza, **por lo que es razonable pensar que, de surgir la misma controversia en el futuro, nuevamente se tornará académica antes de que un tribunal la adjudique** (Énfasis suplido). J. J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis S. A., 2009, pág. 186.

En el caso particular ante nuestra consideración, es innegable que la totalidad de la controversia llegó a su final el 21 de octubre de 2009 cuando el Tribunal de Primera Instancia declaró inimputable al Sr. Benjamín Pagán Medina y, en vista de ello, lo absolvió de todos los cargos que pendían en su contra. Es decir, luego de emitida la Opinión de este Tribunal en Pueblo v. Pagán Medina, *supra,* y pendiente la moción de reconsideración presentada por la Procuradora General, ocurrió un cambio fáctico que a todas

luces convirtió en académica dicha petición: **la absolución a base de inimputabilidad del señor Pagán Medina.** Así, pues, la referida moción de reconsideración se tornó académica. Claramente, el dictamen emitido hoy en reconsideración por este Tribunal no tendría ningún efecto sobre el señor Pagán Medina, quien fue debidamente absuelto desde octubre del año pasado.

A nuestro juicio, resulta claro que la excepción de recurrencia invocada por una mayoría de este Tribunal mediante Resolución no justifica la reconsideración del caso de autos en sus méritos. Conforme a lo expresado, la excepción de recurrencia va acompañada de la probabilidad de que la controversia evada la revisión judicial, por su propia naturaleza. **La controversia planteada en el caso que está ante nuestra consideración no es una controversia que por su propia naturaleza se convertiría en académica antes de poder ser objeto de revisión judicial.**

**Este caso evidencia todo lo contrario, pues, a pesar del corto período en que usualmente se desarrollan los procesos penales de esta índole, todas las instancias de nuestra judicatura, a saber, el foro de primera instancia, el foro apelativo intermedio y este Tribunal, tuvieron la oportunidad de considerar y oportunamente resolver la controversia de autos.**

De hecho, como prueba fehaciente al respecto, es preciso señalar que hace apenas unas semanas se presentó ante la consideración de este Tribunal una petición de *certiorari* que involucraba hechos prácticamente idénticos a

los del caso Pueblo v. Pagán Medina, *supra*. Véase El Pueblo de P.R. v. José L. Castro Rodríguez, CC-2008-1101 (auto denegado). En éste, al igual que en los hechos de Pueblo v. Pagán Medina, *supra*, el Sr. José L. Castro Rodríguez estuvo detenido preventivamente más del límite de 180 días que dispone nuestra Constitución antes de celebrársele juicio. Así, este recurso fue adjudicado por las tres instancias de nuestra judicatura, demostrando que un caso que envolviese hechos similares no evadiría la revisión judicial. Por lo tanto, es evidentemente incorrecto que se aplique la excepción de recurrencia cuando falta un elemento esencial para que pueda ser aplicada, o sea, que una controversia similar evada la revisión judicial.

Evidentemente, tampoco puede invocarse el hecho de que la sentencia dictada en este caso aún no haya advenido final y firme como fundamento para justificar la supuesta recurrencia y entender en la moción de reconsideración presentada por la Procuradora General. Ni ese hecho, ni la mera presentación de una moción de esa naturaleza pueden servir de base para ignorar las limitaciones que nos impone la doctrina de autolimitación judicial. **Bajo esa premisa, sin duda, se pudiera argumentar que ningún caso podría tornarse académico antes de que advenga final y firme una sentencia emitida con relación a éste**. Simple y llanamente, el criterio de recurrencia nada tiene que ver con la finalidad de las sentencias, sino con la posibilidad de que un asunto se repita o vuelva a ocurrir. Ampararse en tal criterio para resolver una controversia ya inexistente, no

sólo contraviene los más elementales principios de justiciabilidad, sino que soslaya por completo el significado de la doctrina de academicidad.

Por lo tanto, concluimos que en la etapa actual de los procedimientos, la moción de reconsideración se ha tornado académica por no haber controversia alguna que reconsiderar. En el momento en se emitió Pueblo v. Pagán Medina, *supra*, evidentemente había una controversia viva que este Tribunal adjudicó, a petición de un acusado que estaba sumariado y cuestionó la legalidad de su encarcelación. La Opinión que emitimos entonces resolvió la controversia y pautó la norma aplicable en estos casos. Ahora bien, la absolución del señor Pagán Medina durante la etapa de reconsideración de su caso equivale a un cambio fáctico que eliminó la controversia que teníamos pendiente en ese momento, contrario a las etapas adjudicativas anteriores donde sí existía la referida controversia. Es por ello que la moción de reconsideración es la única que se ha tornado académica y estamos impedidos de actuar en esta etapa.

Por otro lado, referente a la distinción entre ámbitos procesales que hace una mayoría de este Tribunal mediante la Resolución emitida hoy, es oportuno aclarar que si bien los procesos criminales están revestidos de la más alta celeridad, un recurso extraordinario como el *hábeas corpus*, comúnmente utilizado en casos como éste, exige una premura mayor que la de los procesos criminales ordinarios. Concluir que los procesos criminales finalizarán antes de

ser atendido un auto de *hábeas corpus*, y que por ello la controversia de éste se tornaría académica, es restarle la característica procesal más elemental de este recurso: su extraordinaria premura. De hecho, nuestra propia Constitución, en la sección 13 del Art. II, establece que el *hábeas corpus* será concedido con rapidez y libre de costas. Más aún, este Tribunal puede atender en jurisdicción original un recurso de *hábeas corpus*. Por esta razón, resulta sorprendente que se utilice este tipo de distinción entre ámbitos procesales como subterfugio para adjudicar recursos cuyas controversias han sido completamente resueltas, como ocurrió en el caso ante nos.

Además, nos preocupa que, luego del Estado haber sometido una moción de reconsideración, haya promovido la continuación del caso en instancia sin haberle solicitado a este Tribunal la paralización del proceso en contra del señor Pagán Medina. Por ende, el foro de instancia continuó con los procedimientos que concluyó con la absolución del señor Pagán Medina, y no fue hasta ese momento que este Tribunal fue informado del resultado mediante una moción de la representación legal de la Sociedad para la Asistencia Legal.

En fin, en la Opinión que emitimos hace menos de un año, se estableció clara y detalladamente la normativa que regiría la interpretación del término máximo de seis meses que establece nuestra Constitución para mantener a una persona en detención preventiva en aquellos casos en que se determine que ésta no es procesable criminalmente. De

surgir una controversia similar los tribunales deben resolver conforme a dicha normativa. Si este Tribunal interesa reconsiderar dicho dictamen, en estricto Derecho lo que procede es esperar por el caso apropiado para hacerlo. Ello es así, pues como hemos visto, la moción ante nuestra consideración se tornó académica al decretarse la absolución del señor Pagán Medina y, a pesar de que la controversia presentada en ésta podría repetirse, no sería susceptible de evadir la revisión judicial.

No obstante, una mayoría de este Tribunal resuelve mediante Resolución de otro modo y a su vez, en efecto, implícitamente modifica la normativa sobre academicidad establecida en nuestra jurisprudencia. No hay que ser un adivino para poder anticipar que de esta manera se allana el camino para revocar la Opinión emitida por este Tribunal el 18 de febrero de 2009, que garantiza el derecho de toda persona a un juicio rápido consagrado en la Sección 11 de la Constitución del Estado Libre Asociado de  Puerto Rico, 1 L.P.R.A., Documentos Históricos, Art. II, sec. 11. En vista de todo lo anterior, disentimos de este curso de acción.


                                    Federico Hernández Denton
                                         Juez Presidente