Opinión concurrente emitida por
el Juez Presidente Señor Hernández Denton.
Al igual que una mayoría de este Tribunal, entendemos que la controversia planteada en los dos casos de epígrafe se tornó académica. Sin embargo, no podemos suscribir la totalidad de los fundamentos de la Opinión del Tribunal, razón por la cual emitimos esta opinión concurrente.
I
La presente controversia surgió el 28 de junio de 2010, cuando el Sen. Eduardo Bhatia Gautier y demás senadores por acumulación de la minoría legislativa del Partido Popular Democrático, junto al ciudadano Víctor Lozano Santos, presentaron, ante el Tribunal de Primera Instancia, un recurso de mandamus dirigido a que el tribunal ordenara al Presidente del Senado permitir el acceso de la prensa a las sesiones legislativas. Acto seguido, un grupo de organi-zaciones periodísticas presentó, esta vez ante este Tribu *950 nal, otro recurso de mandamus dirigido al mismo propósito. Ambos recursos aludían al hecho de que el 24 de junio de 2010, el Presidente del Senado prohibió el acceso de la prensa a las gradas del Hemiciclo, veda que se exten-dió por varios días. Esta controversia, sin embargo, se tornó académica cuando el Presidente del Senado restituyó el acceso de la prensa a las sesiones legislativas y de esta manera cumplió con el mandato expreso de nuestra Constitución.
Debe recordarse que nuestra Constitución consagra el acceso público a las sesiones legislativas. Sobre este particular, nuestro texto fundacional no podría ser más claro: “Las sesiones de las cámaras serán públicas.” Art. Ill, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 391. Dicha disposición promueve un interés ciudadano estrecha-mente relacionado con el derecho a la información pública. Este derecho, por su parte, es corolario de los derechos de libertad de expresión, prensa y asociación, según consagra-dos en nuestra Constitución. Art. II, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1; Ortiz v. Dir. Adm. de los Tribunales, 152 D.P.R. 161 (2000); Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982). De igual forma, una reclamación de la prensa en cuanto al derecho de acceso público a ciertos procedimien-tos gubernamentales tiene tangencia con la cláusula de li-bertad de expresión, prensa y asociación de la Primera En-mienda de la Constitución de Estados Unidos. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980).
El carácter público de las sesiones legislativas es un ele-mento fundamental del parlamentarismo estadounidense y puertorriqueño desde sus inicios. Como señalara el Tribunal Supremo de Estados Unidos en Richmond Newspapers, Inc. v. Virginia, supra, las libertades de expresión y prensa juegan un rol estructural en asegurar y promover nuestro sistema republicano de gobierno, y ello incluye las presunciones de un debate público vigoroso y de un com-portamiento cívico informado. Id., pág. 588.
*951 Una vez el Presidente del Senado implantó las medidas administrativas para cumplir con el referido mandato constitucional, la controversia perdió su carácter adversa-tivo y se tornó académica. Aunque no contamos con deter-minaciones de hechos que establezcan con exactitud cuándo fue que se restituyó el acceso, tomamos conoci-miento judicial de que, en los meses siguientes a los refe-ridos hechos, la Cuarta Sesión Ordinaria de la Decimo-sexta Asamblea Legislativa se llevó a cabo de principio a fin sin que, durante ese período, los demandantes presen-taran nuevas alegaciones de que el acceso a las sesiones legislativas continuaba vedado. Por ende, la controversia traída ante los foros judiciales cesó de existir.
Claramente, a la luz de los hechos expuestos anterior-mente, no aplica aquí la excepción a la doctrina de acade-micidad basada en la recurrencia de la controversia. Como se sabe, esta excepción aplica sólo en circunstancias excep-cionales, a saber: cuando una controversia que se ha tornado académica, de repetirse, evadiría la revisión judicial. Dicho elemento, considerado esencial, no está presente en la controversia de autos. Si el Presidente del Senado pro-hibiera nuevamente el acceso público a las sesiones del Se-nado, en contravención del mandato constitucional, no existiría impedimento para que las personas afectadas por dicha actuación insten la acción judicial correspondiente para hacer valer sus derechos constitucionales. Es evi-dente, pues, que si la controversia se repitiese, ésta no eva-diría la revisión judicial. Esa es precisamente la conclusión a la que una mayoría de este Tribunal llega hoy.
Al así resolver, la mayoría aplica restrictivamente la doctrina de academicidad, reconociendo que la excepción de recurrencia sólo aplica en circunstancias excepcionales. Esa es la doctrina vigente en nuestro ordenamiento, aim cuando, a nuestro entender, la mayoría haya sido laxa re-cientemente al aplicarla en otros casos. Véanse: U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253 (2010); Pueblo v. *952 Pagán Medina, 177 D.P.R. 842 (2010); Suárez Cáceres v. Com. Estatal Elecciones, 175 D.P.R. 909 (2009).(1)
Tal incongruencia en la aplicación de la doctrina de aca-demicidad resta seguridad y certeza jurídica a nuestras decisiones y puede levantar interrogantes sobre el posible uso de una metodología consecuencialista de adjudicación dirigida al resultado.
II
Por último, no suscribimos las expresiones de la mayo-ría de este Tribunal sobre el manejo del recurso presentado por el Senador Bhatia y otros, por parte del Tribunal de Primera Instancia. En esencia, se objeta la premura de dicho foro para señalar una vista en un caso que, según alegaba el demandado, se había tornado académico. No es-tamos de acuerdo con este criterio.
Al momento de señalar la vista, el foro de instancia aún tenía jurisdicción sobre el caso ante su consideración. Por lo tanto, dicho tribunal actuó correcta y responsablemente dentro de sus funciones ministeriales para atender con ra-pidez el recurso ante su consideración. Tal sentido de dili-gencia es precisamente lo que se espera de las salas que atienden recursos extraordinarios, particularmente, cuando, como en este caso, se alega la violación de derechos fundamentales.
Además, como imperativo del debido proceso de ley, pro-cedía que el foro de instancia llevara a cabo una vista para dilucidar si la controversia se había tornado académica o no, si ésta era capaz de repetirse y evadir la revisión judi- *953 rial, y si la decisión del Presidente del Senado de restituir el acceso a las gradas atendía los reclamos de los deman-dantes de manera permanente.

 Tal laxitud no pasó desapercibida en Suárez Cáceres v. Com. Estatal Elecciones, 175 D.P.R. 909 (2009), y Pueblo v. Pagán Medina, 177 D.P.R. 842 (2010). Véanse nuestros votos disidentes en ambos casos. Por su parte, en U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253 (2010), nos inhibimos. Cabe señalar que, desde hace un tiempo, nuestra posición ha sido que la doctrina de academicidad, específicamente la excepción de recurrencia, debe aplicarse restrictivamente. En tal sentido, véanse: C.E.E. v. Depto. de Estado, 134 D.P.R. 927 (1993), opinión concurrente; P.N.P. v. Carrasquillo, 166 D.P.R. 70 (2005); Rullán v. Fas Alzamora, 166 D.P.R. 742 (2006), opinión disidente.