Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ROBERTO QUIÑONES RIVERA**<br><br>Parte Recurrente<br><br><br>v.<br><br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION**<br><br>Parte Recurrida | KLRA202400322 | **REVISIÓN ADMINISTRATIVA** Procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br><br>CASO: **B-198-24**<br><br><br>Sobre: **TIEMPO DE AJUSTE EN EL AREA LABORAL** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante nos, Roberto Quiñones Rivera, en adelante, Quiñones Rivera ó recurrente, solicitando que revisemos la determinación del Departamento de Corrección y Rehabilitación, en adelante, DCR o recurrida, emitida por la División de Remedios Administrativos, el 13 de febrero de 2024, y recibida por el recurrente el 21 de febrero de 2024. En la misma, se le indicó que *debía esperar seis (6) meses para poder ser elegible a un trabajo.*

Por lo fundamentos que expondremos a continuación, *desestimamos* el recurso de autos por *falta de jurisdicción por académico.*

**I.**

Quiñones Rivera, quien se encuentra cumpliendo una pena de reclusión en la Institución Correccional 501 de Bayamón, trabajó en el área de Ropería de dicha institución, hasta diciembre del año 2023. Sin embargo, alega el recurrente que fue removido de sus

labores, luego de un supuesto incidente con una oficial correccional. Según el recurso ante nos, este le indicó al Superintendente de la facilidad que había solicitado en varias ocasiones que le asignaran un nuevo trabajo en las brigadas, sin éxito. Expone Quiñones Rivera que el Superintendente le indicó que, al ser removido de su trabajo en la Ropería por motivos de seguridad, *debía esperar seis (6) meses para volver a solicitar.*

Por estos hechos, el recurrente presenta la *"Solicitud de Remedio Administrativo"*, número B-198-24, el 29 de enero de 2024.[1] En su petitorio, exigió que se le explicara por conducto de cual disposición reglamentaria debía esperar seis (6) meses.[2]

El 21 de febrero de 2024, Quiñones Rivera recibió la *"Respuesta al Miembro de la Población Correccional"*.[3] En la misma, se le indicó que la decisión respondía al Artículo 10 del Reglamento de Nuevas Oportunidades de Rehabilitación y Tratamiento, Núm. 9497.[4] Se le indicó, además, que la supervisora regional de Programas y Servicios de la Región Norte fue la persona que recomendó los seis (6) meses.[5]

Sin embargo, el recurrente presentó una *"Solicitud de Reconsideración"*, en la que arguyó que había sido removido por medidas de seguridad. Contendió que el artículo invocado previamente aplicaba solo cuando el confinado hubiese sido removido de sus labores por un acto prohibido de Nivel I o Nivel II, del Reglamento Disciplinario vigente.[6]

El 21 de mayo de 2024, Quiñones Rivera recibió la *"Resolución"* de la División de Remedios Administrativos en

---

[1] Apéndice del recurso, Anejo I.
[2] *Id.*
[3] *Id.* Anejo 2.
[4] *Id.*
[5] *Id.*
[6] *Id.* Anejo 3.

respuesta a su solicitud de reconsideración.[7] En la misma, se confirmó la determinación original.

Inconforme, Quiñones Rivera presentó ante esta Curia un recurso de *"Revisión Judicial"* el día 18 de junio de 2024. En su escrito, nos hizo el siguiente señalamiento de error:

> VIOLÓ LA AGENCIA RECURRIDA EL DERECHO CONSTITUCIONAL DE REHABILITACIÓN MORAL Y SOCIAL DE RECURRENTE AL UTILIZAR EL ARTÍCULO X INCISO 6 DEL REGLAMENTO 9497 DEL DCR, PARA PROHIBIRLE AL RECURRENTE SER EVALUADO POR EL CCT PARA SER ASIGNADO A LABORAR EN UNA BRIGADA DE TRABAJO, ENTENDIÉNDOSE QUE LA BAJA DEL RECURRENTE DE SU TRABAJO OBEDECIÓ A UNA "MEDIDA DE SEGURIDAD", NO A LA COMISIÓN POR ESTE DE UN ACTO PROHIBIDO NIVEL I O NIVEL II DEL REGLAMENTO DISCIPLINARIO DEL DCR, VIGENTE.

Mediante *"Resolución"* del 28 de junio de 2024, este Tribunal le concedió cinco (5) días al recurrente para acreditar el recibo de la respuesta al remedio administrativo, además de evidenciar el cumplimiento con lo dispuesto en la Regla 58 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 58. Además, se le concedió a la parte recurrida hasta el 18 de julio de 2024 para presentar su posición con relación al recurso, conforme a lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63.

El 18 de julio de 2024, la recurrida compareció mediante *"Escrito en Cumplimiento de Resolución"*. Por su parte, el recurrente presentó una *"Moción en Cumplimiento de Resolución"* el día 29 de julio de 2023.

Con el beneficio de la comparecencia de ambas partes, procedemos a expresarnos.

---

[7] Apéndice del recurso, Anejo 4.

## II.

### A. Jurisdicción

Conocido es que la jurisdicción es el poder o la autoridad que tiene un Tribunal para considerar y decidir casos o controversias que tiene ante sí. *Matos, Sostre v. Registradora*, 2024 TSPR 148, 213 DPR ___ (2024); *R & B Power Inc. v. Junta Subastas ASG*, 2024 TSPR 24, 213 DPR ___ (2024); *FCPR v. ELA et al.*, 211 DPR 521, 529 (2023); *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022), *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021). También, un tribunal deberá poseer "tanto jurisdicción sobre la materia como sobre las partes litigiosas". *Adm. Terrenos v. Ponce Bayland*, supra, citando a *Shell v. Srio. Hcienda*, 187 DPR 109, 122 (2012). Véase, además, *FCPR v. ELA et al.*, supra, pág. 530; *Cobra Acquisitions v. Mun. Yabucoa et al.*, supra, pág. 394.

La falta de jurisdicción de un foro judicial incide de manera fatal sobre su autoridad para adjudicar una materia, por lo que puede levantarse motu proprio. *Cobra Acquisitions v. Mun. de Yabucoa*, supra, pág. 394-395; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372 (2018); *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014).

Ante la falta de jurisdicción, el tribunal debe así declararlo y proceder a la desestimación del recurso, toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho, pues la ausencia de jurisdicción es insubsanable. *Pueblo v. Rios Nieves*, 209 DPR 264, 273 (2022); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018); *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012).

No es necesario que una o ambas partes cuestionen la jurisdicción de un tribunal, sino que es nuestro deber levantarlo *motu proprio*. Así lo establece la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83, la cual confiere

facultad a este Tribunal para, *a iniciativa propia* o a petición de parte, desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

## B. Academicidad

Es máxima de derecho que los Tribunales están llamados a resolver o adjudicar controversias jurídicas de carácter justiciable. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021); *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011); *Moreno v. Pres. UPR II*, 178 DPR 969, 973 (2010). El principio de justiciabilidad circunscribe las facultades de adjudicación que ostentan los Tribunales, a casos con partes que se encuentren en posiciones genuinamente antagónicas, y que desean una intervención oportuna y reparadora. *Super Asphalt v. AFI y otro,* supra, pág. 815; *Lozada Tirado et al. v. Testigos Jehová*, 177 DPR 893, 907 (2010); *E.L.A. v. Aguayo*, 80 DPR 552, 584 (1958).

La jurisprudencia ha reiterado que una controversia carece de justiciabilidad cuando: "(1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) **hechos posteriores al comienzo del pleito han tornado la controversia en académica**; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro". *Super Asphalt v. AFI y otro,* supra, pág. 815, citando a *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017).

La justiciabilidad es una doctrina de rango constitucional que persigue el fin de evitar que se obtenga un fallo sobre una controversia o una determinación inexistente o impráctica. *E.L.A. v. Aguayo*, supra, pág. 582. Uno de los resultados de las controversias no justiciables, es la academicidad. *Crespo v. Cintrón*, 159 DPR 290, 298 (2003). Nuestro más Alto Foro ha establecido que un caso es

académico "cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que esta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia". *Bhatia Gautier v. Gobernador*, supra, pág. 73; *C.E.E. v. Depto. de Estado*, 134 DPR 927, 935 (1993).

Por ello, cuando un caso se torna académico, ***el foro judicial pierde jurisdicción sobre el mismo, y debe abstenerse de entrar en la controversia originalmente planteada***. *Super Asphalt v. AFI y otro,* supra, pág. 816; *C.E.E. v. Depto. de Estado*, supra, pág. 595-596; *E.L.A. v. Aguayo*, supra. Así pues, la norma de la academicidad impide la creación de precedentes inoportunos. *Super Asphalt v. AFI y otro*, supra; *P.N.P. v. Carrasquillo*, 166 DPR 70, 75 (2005).

Por su parte, y en reconocimiento de lo anteriormente expuesto, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83, dispone que este Tribunal, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualquiera de los siguientes motivos:

(1) que el Tribunal de Apelaciones carece de jurisdicción;

(2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;

(3) que no se ha presentado o proseguido con diligencia o de buena fe;

(4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o

***(5) que el recurso se ha convertido en académico.***

[Énfasis nuestro]

### III.

Luego de haber sido dado de baja de sus labores en la Ropería de la institución correccional en la que vive, Quiñones Rivera le

solicitó al Superintendente que lo ubicaran a trabajar en las brigadas. Este le indicó que debía esperar seis (6) meses antes de ser evaluado nuevamente para laborar.

Sin embargo, luego de una solicitud de revisión administrativa el 29 de enero de 2023, se le denegó la misma. El DCR apoyó su decisión en el Artículo 10, Sección A, inciso 6 del Reglamento Núm. 9497. Arguyó en su contestación al recurrente, y ante esta Curia en su comparecencia, que esta disposición requiere un exitoso ajuste institucional, por lo menos seis (6) meses anteriores a la fecha de la solicitud. Añade que el inciso 8 de la misma sección, dispone que, para participar de estas oportunidades, el miembro de la población correccional tampoco puede haber incurrido en actos prohibidos de Nivel I en el último año, o Nivel II en los últimos seis (6) meses.

Por esto arguyó ante nos que el recurrente no es acreedor del programa de rehabilitación en una brigada, hasta que no transcurrieran los seis (6) meses a *partir del 29 de enero de 2024.* Puntualizó que *ese tiempo vencía el 29 de julio de 2024.* En su escrito, la recurrida nos señaló que, "[u]na vez transcurra dicho término, el DCR determinará si el recurrente debe ser ubicado en un empleo a la luz de su plan institucional y los trabajos disponibles en la institución correccional".

El 28 de junio de 2024, emitimos una *"Resolución"* en la que ordenamos al recurrente a evidenciar la notificación a la recurrida del recurso, y a esta última a expresarse sobre el mismo. El 18 de julio de 2024, el DCR compareció. Once (11) días más tarde, el 29 de julio de 2024, el recurrente compareció ante nos solicitando que lo relevemos de lo ordenado. Es decir, el caso quedó perfeccionado el día 29 de julio de 2024. Precisamente desde este día, el DCR se encuentra en posición de evaluar la solicitud originalmente denegada, y que aquí nos ocupa. Incluso, así lo reconoce la recurrida en su escrito.

La controversia planteada quedó inexistente antes de que pudiéramos adjudicar la misma, por lo que el caso de autos se ha vuelto *académico*.

**IV.**

Por los fundamentos que anteceden, se *desestima el recurso ante nos por falta de jurisdicción por academicidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Juez Grana Martínez disiente con voto escrito.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ROBERTO QUIÑONES RIVERA**<br><br>Parte Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION**<br><br>Parte Recurrida | KLRA202400322 | **REVISIÓN ADMINISTRATIVA** Procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br>CASO: **B-198-24**<br><br>Sobre: **TIEMPO DE AJUSTE EN EL AREA LABORAL** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio.

## VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

La razón de ser del principio de justiciabilidad responde a que los tribunales limitan su intervención a resolver controversias reales y definidas que afectan las relaciones jurídicas de partes antagónicas u opuestas. Son criterios que el foro judicial debe evaluar antes de considerar y pronunciarse sobre los méritos de una controversia. La controversia no será justiciable cuando: "(1) se procure resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021). La razón de ser es que las controversias han de ser genuinas, surgidas entre partes opuestas que están verdaderamente interesados en obtener un remedio que afecte su relación jurídica. Es decir, los foros judiciales no existen para resolver pleitos colusorios, que se han convertido en académicos o ficticios. *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958). Es una obligación del foro judicial el investigar, en las ocasiones necesarias, las circunstancias en las cuales se originan y desarrollan los litigios a los efectos de

determinar si posee autoridad para actuar. *Asoc. de Periodistas v. González*, 127 DPR 704, 717 (1991); *E.L.A. v. Aguayo*, supra.

Como antes expresado, la academicidad constituye una de las manifestaciones de la justiciabilidad. La academicidad busca proteger el uso de los recursos judiciales evitando el uso inadecuado de los recursos judiciales y la creación de precedentes innecesarios. El Tribunal Supremo de Puerto Rico ha resuelto que un caso es académico cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". De igual manera, una controversia que en sus inicios era justiciable se convierte en académica cuando "'los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución". Por tal razón, los tribunales venimos llamados a evaluar los eventos anteriores, próximos y futuros, a fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo, toda vez que siendo la controversia académica, el foro debe abstenerse de considerar la controversia. *Super Asphalt v. AFI y otro*, supra, pág. 816.



Ahora bien, la norma general de academicidad tiene sus excepciones, estas son: (1) se plantea una cuestión recurrente que tienda a evadir la revisión judicial; (2) la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) subsisten consecuencias colaterales vigentes. *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 151 (2011). En cuanto a la excepción de recurrencia, la misma aplica en aquellas ocasiones en las que razonablemente se pueda pensar que la misma controversia puede surgir en el futuro y que nuevamente se tornará académica antes de que algún tribunal pueda

adjudicarla. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 334-335 (2012).

En el recurso se cuestiona una determinación del Departamento de Corrección y Rehabilitación (DCR) que sostiene el impedimento de un miembro de la institución penal de trabajar en la institución por el término de seis meses. El recurrente aparenta indicar que la determinación es producto, según el DCR, de un incidente con un guardia penal, sin embargo, alega que su remoción del trabajo en el área de ropería se debió a motivos de seguridad no relacionados a los expuestos por el Departamento.

Así las cosas, el 29 de enero de 2024, el recurrente presentó una solicitud de remedio administrativo, por la cual recibió una respuesta del Departamento el 21 de febrero de 2024. Oportunamente presentó reconsideración que fue finalmente resuelta el 9 de mayo de 2024 y notificada el 21 del mismo mes y año. El recurso ante nuestra consideración se presentó el 18 de junio de 2024. El 28 de junio de 2024 se le concedió un término al Departamento para presentar su posición en cuanto al recurso, tal cual cumplió el 18 de julio de 2024.

La Opinión Mayoritaria concluye que conforme los trámites interlocutorios para el perfeccionamiento del recurso, el recurso se perfeccionó el 29 de julio de 2024. Razona que, habiendo transcurrido seis meses, la controversia se tornó académica, pues la reglamentación solo requiere un ajuste institucional exitoso de seis meses para volver a ser considerado para una oportunidad laboral, tiempo ya transcurrido desde que presentó el remedio administrativo cuestionando la medida.

No puedo avalar tal conclusión, pues el propio procedimiento establecido en la agencia, además de aquel que conlleva el perfeccionamiento del recurso ante este foro, conllevó más de seis meses. Un análisis riguroso de los términos demuestra que el

proceso que se concedió al recurrente desde sus inicios estaba destinado a convertirse en académico. No puedo avalar tal proceder. Atendería el recurso en sus méritos, toda vez que el trámite procesal analizado rigurosamente plantea una cuestión recurrente que tiende a evadir la revisión judicial.

En San Juan, Puerto Rico, a 30 de agosto de 2024.

GRACE M. GRANA MARTÍNEZ
Jueza del Tribunal de Apelaciones