Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| FERNANDO MARQUEZ GARCÍA<br>Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrida | KLRA202500207 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. C1-191-24<br><br>Sobre: Ventilación Unidades de Vivienda del Centro de Ingreso y Diagnóstico Metropolitano |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Juez ponente, Adames Soto

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece el Sr. Fernando García Márquez (señor García Márquez o parte recurrente), quien es miembro de la población penal, por derecho propio y en forma de pobre, solicitando que revoquemos la *Resolución* del 19 de febrero de 2025, emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o parte recurrida). Mediante el referido dictamen, la parte recurrida determinó que el señor García Márquez había sido trasladado del Centro de Detención donde se originó su reclamación por las condiciones del módulo de vivienda, por lo cual la situación planteada ya no persistía. También, el DCR se proclamó sin jurisdicción para atender el asunto planteado por la parte recurrente.

Examinado el recurso instado ante nuestra consideración, *se desestima* por académico. Veamos los hechos procesales pertinentes.

Número Identificador

SEN2025_____

## I. Resumen del tracto procesal

En su recurso de revisión judicial, presentado el 4 de abril de 2025, el señor Fernando García Márquez arguye que llegó a la Institución Bayamón 705 el 18 de septiembre de 2024 y fue asignado a la celda Núm. 21 del Edificio 7-B-6. La parte recurrente acompañó el aludido recurso con la *Solicitud de Remedio Administrativo* Núm. CI-159-24,[1] del 20 de septiembre de 2024, recibida por la División de Remedios Administrativos (DRA) el 11 de octubre de 2024, en la cual denunció que la celda se encontraba en condiciones deplorables al no contar con luz y agua, abanico funcional, televisor y al tener las paredes ¨llenas de grafitis¨. Por lo tanto, adujo que no se estaba cumpliendo con los reglamentos de convivencia institucional. El 24 de octubre de 2024 la DRA produjo la *Respuesta al Miembro de la Población Correccional* correspondiente. Esta última indica que anejaron la respuesta emitida por el área concernida, pero dicho documento no fue traído ante nuestra consideración.

De otra parte, el 23 de octubre de 2024 el señor García Márquez presentó una *Solicitud de Remedio Administrativo* Núm. CI-191-24,[2] recibida por la DRA el 12 de noviembre de 2024, donde denunció las condiciones de calor extremo que sufría dentro del módulo de vivienda. El 11 de diciembre de 2024 la parte recurrente reiteró la *Solicitud* Núm. CI-191-24 aduciendo que la situación planteada no había sido resuelta. Sin embargo, días antes, específicamente el 5 de diciembre de 2024, la DRA había emitido la *Respuesta al Miembro de la Población Correccional* de la División de Remedios Administrativos del DCR referente a la *Solicitud* Núm. CI-191-24. Esta vez, el documento anejado a la *Respuesta,* intitulado *Respuesta del Área Concernida/Superintendente,* con fecha del 27 de noviembre de 2024, indicaba que ¨en relación a los extractores se realizaron Orden de Compra y estamos en espera. Estos son los que ventilan las unidades de vivienda¨.

---

[1] Anejo I del recurso de revisión judicial.
[2] Anejo II del recurso de revisión judicial.

El 30 de diciembre de 2024, recibida por la DRA el 7 de enero de 2025, la parte recurrente presentó una *Solicitud de Reconsideración* donde arguyó que la *Respuesta* a la *Solicitud* Núm. CI-191-24 no presentaba un plan de mitigación ante una situación que se había prolongado por más de cuatro (4) años. Por lo cual, solicitó que se colocaran abanicos y se le dieran más días de baños a los confinados. Por último, manifestó que continuaba con su petición a pesar de haber sido trasladado a la Institución Bayamón 1072.

A lo cual, el 28 de enero de 2025 el DRA acogió la petición de reconsideración. Consecuentemente, el 19 de febrero de 2025, notificada el 10 de marzo de 2025, determinó, mediante *Resolución*, que no tenía jurisdicción para atender la *Solicitud de Reconsideración*, habida cuenta que la parte recurrente había sido trasladada al Centro de Detención Bayamón 1072, por lo cual la situación planteada ya no persistía. Así también, fundamentó su decisión en la falta de jurisdicción para atender un reclamo suscrito por un miembro de la población correccional en nombre de otro.[3]

Según adelantamos, el señor García Márquez, al mostrarse inconforme, el 4 de abril de 2025 presentó el recurso de revisión judicial que nos ocupa. A pesar de que este no particularizó en su escrito la fecha de la determinación de la DRA del DCR, sí incluyó el último dictamen revisable por este foro, la *Resolución* del 19 de febrero de 2025. Por lo tanto, solo haremos referencia a esta en el análisis de los hechos.

El 27 de mayo de 2025 el Procurador General presentó un *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

---

[3] En lo pertinente, el inciso (b) de la Sección 2 de la Regla VI del Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015, dispone que la DRA no tendrá jurisdicción para atender:

> [s]olicitudes de Remedios suscritas por un miembro de la población correccional en representación de otros miembros de la población correccional en la misma solicitud. Excepto cuando se refiera a reportar confidencias de cualquier tipo de violencia sexual en el entorno correccional.

## II. Exposición de Derecho

### a. Doctrina de Justiciabilidad y la Academicidad

El principio de justiciabilidad surge a partir de consideraciones de índole constitucional, de autolimitación adjudicativa, las cuales exigen tener ante nosotros un caso y controversia real antes de ejercer el poder judicial. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931–32 (2011). "[E]l principio de justiciabilidad como autolimitación del ejercicio del poder judicial responde en gran medida al papel asignado a la judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas de gobierno". *Fund. Surfrider y otros v. ARPe*, 178 DPR 563, 571 (2010).  De lo anterior se ha entendido, que los tribunales solo podemos resolver aquellos casos que sean justiciables con controversias genuinas y surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas. *Torres Montalvo v. Gobernador*, 194 DPR 760, 766 (2016); *Lozada Sánchez et al v. JCA*, 184 DPR 898, 917 (2012); *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 931.

La doctrina de justiciabilidad imprime en nuestro ordenamiento jurídico ciertas limitaciones al ejercicio judicial con el propósito de que los tribunales podamos determinar el momento oportuno para nuestra intervención. *Presidente de la Cámara v. Gobernador*, 167 DPR 149, 158 (2006). Así, se ha resuelto que para que una controversia sea justiciable se debe evaluar si es (1) tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) que el interés sea real y substancial y que permita un remedio específico mediante una sentencia de carácter concluyente, y finalmente (3) si la controversia es propia para una determinación judicial distinguiéndose de una disputa de carácter hipotético o abstracto, y de un caso académico o ficticio. *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 932; *Noriega v. Hernández Colón*, 135 DPR 406, 421-422 (1994); *ELA v. Aguayo*, 80 DPR 552, 583-584 (1958). Por el contrario, la doctrina sostiene que no será justiciable aquella

controversia en que: (1) se trata de resolver una cuestión política; (2) una de las partes no tiene legitimación activa; (3) es o se convierte en académica; (4) se buscan obtener una opinión consultiva, o (5) se promueve un pleito que no está maduro. *Noriega v. Hernández Colón*, supra, pág. 421.

Como se desprende, la academicidad es una de las circunstancias que invocan a la autolimitación del poder judicial según el principio de justiciabilidad. Bajo este concepto se persigue: (1) evitar el uso inadecuado de recursos judiciales, (2) asegurar que haya suficiente adversidad para que las controversias se presenten y defiendan competente y vigorosamente, y (3) obviar precedentes innecesarios. *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 932; *Torres Santiago v. Dpto. de Justicia*, 181 DPR 969, 982 (2010); *PNP v. Carrasquillo*, 166 DPR 70, 75 (2005); *CEE v. Depto. de Estado*, 134 DPR 927, 935–936 (1993). Al igual que el concepto de madurez, este se enfoca en el aspecto temporal de las controversias. Se sostiene que un caso se torna académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada, que en realidad no existe, (2) una determinación de un derecho, antes de que haya sido reclamado o (3) una sentencia sobre un asunto que al dictarse no podrá tener efectos prácticos sobre una controversia existente. (Énfasis suplido.) *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 932; *ELA v. Aguayo*, supra, pág. 584.

Cuando un tribunal atiende un planteamiento de academicidad, nuestro ordenamiento le impone la obligación de desestimar el recurso si de los hechos o del derecho aplicable surge que las circunstancias han variado de tal forma, que no existe una controversia vigente entre partes adversas que amerite su intervención. *Moreno v. Pres. UPR II*, 178 DPR 969, 974 (2010). El Tribunal Supremo ha expresado que "una controversia puede convertirse en académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial torna en ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos". *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, págs. 932-933, citando a *San Gerónimo Caribe Project v. ARPe*, 174 DPR 640, 652-653 (2008). Por lo tanto, al evaluar el concepto de

academicidad "hay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente". *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 933, citando *PPD v. Gobernador I*, 139 DPR 643, 676 (1995). Así pues, un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido. *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 933.

No obstante, la doctrina de academicidad reconoce varias excepciones en su aplicación cuando: (1) se presenta una controversia recurrente y capaz de evadir revisión judicial, (2) la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia, (3) la controversia se ha tornado académica para el representante de una clase, pero no para otros miembros de la clase, y (4) persisten consecuencias colaterales que no se han tornado académicas. *Pueblo v. Díaz Alicea*, 204 DPR 472, 482 (2020); *Torres Santiago v. Dpto. de Justicia*, supra, págs. 982-983. Véase, además, *Asoc. Fotoperiodistas v. Rivera Schatz*, supra, pág. 933; *UPR v. Laborde*, 180 DPR 253, 281 (2010); *Cruz v. Adm. de Corrección*, 164 DPR 341, 349-350 (2005).

### b. Desestimación

La Regla 83 de nuestro Reglamento, según enmendado, 4 LPRA Ap. XXII-B, R. 83, establece las circunstancias en que este foro intermedio puede desestimar un recurso presentado. En lo que resulta pertinente al caso ante nuestra consideración, establece:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>> (1) que el Tribunal de Apelaciones carece de jurisdicción;
>> (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;
>> (3) que no se ha presentado o proseguido con diligencia o de buena fe;
>> (4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o
>> **(5) que el recurso se ha convertido en académico.**
>
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualquiera de los motivos consignados en el inciso (B) precedente. *Íd.*
>
> (Énfasis nuestro y texto omitido del original).

### III. Aplicación del Derecho a los hechos

En su solicitud de desestimación, el DCR plantea que el asunto presentado por la parte recurrente no resulta justiciable, en tanto se tornó académico. Por consiguiente, conviene atender inicialmente ese argumento.

Como adelantamos, uno de los principios rectores que determinan si estamos habilitados para intervenir con una causa de acción refiere al concepto de la justiciabilidad. Tal concepto incluye el de la academicidad, por lo que nuestra intervención se encuentra restringida cuando nuestra resolución sobre una controversia pierde todo efecto práctico sobre lo que se nos solicite resolver.

En atención a lo anterior, vemos que, los reclamos de la parte recurrente por las condiciones de calor excesivo que sufría mientras se encontraba en su celda, iniciaron mientras permanecía recluido en la Institución Bayamón 705. Dichas denuncias quedaron plasmadas en la *Solicitud* Núm. CI-191-24. Entonces, no tan solo la DRA le respondió que había hecho la orden de compra de los ventiladores para atender la situación de calor, sino que, en la propia *Solicitud de Reconsideración*, el señor García Márquez manifestó que continuaba con su petición a pesar de haber sido trasladado a la Institución Bayamón 1072. Similarmente, en el recurso de revisión judicial, la parte recurrente reitera que radicó la solicitud de remedio administrativo estando en la Institución Bayamón 705, pero que fue trasladado a la Institución Bayamón 1072. A pesar de ello, manifiesta que insiste en su causa de acción porque las condiciones de vida de la institución no son aptas para seres humanos.

Entonces, al tratase de una reclamación de un remedio administrativo por las condiciones del módulo de vivienda que le afectaban personalmente, el traslado a otra institución penal tornó la controversia en una académica. Es decir, durante la consideración de la *Solicitud* Núm. CI-191-24 acontecieron *cambios fácticos o procesales que convirtieron la controversia en una ficticia, de modo tal que el fallo que emita el tribunal no tendría efectos*

*prácticos por tratarse de un asunto inexistente. Lozada Tirado et al. v. Testigos Jehová,* supra. Tampoco observamos alguna de las excepciones a la doctrina de academicidad que nos coloque en posición de atender los méritos del asunto planteado.

## IV. Parte dispositiva

Examinado el recurso ante nuestra consideración, decidimos desestimar el recurso por academicidad.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones